# EXHIBIT A

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 BROADWAY
NEW YORK, NEW YORK 10019-6799
212-506-1700
FACSIMILE: 212-506-1800

WRITER'S DIRECT DIAL NUMBER
(212) 506-1742

ATLANTA
HOUSTON
MIAMI
NEWARK
SAN FRANCISCO

September 15, 2011

**VIA E-MAIL**

Isaac S. Ashkenazi, Esq.
Paul Hastings LLP
75 East 55th Street
New York, NY 10022

Re: *Daiichi Sankyo, Inc. & Genzyme Corporation v. Watson Pharmaceuticals, Inc., et al.*, **Civil Action No. 10-32 (NLH)(AMD) CONSOLIDATED**

Dear Isaac:

We write on behalf of Watson and Lupin regarding Defendants' Rule 30(b)(6) deposition notice.

Despite two lengthy telephone conferences, Daiichi has not yet agreed to produce a single witness in response to a single topic in Defendants' Rule 30(b)(6) deposition notice. This includes refusals to produce any witness on secondary considerations issues, REDACTED and on which Daiichi has unique knowledge by virtue of marketing Welchol®, the commercial colesevelam hydrochloride product. Daiichi is the sole party in this case that has not agreed to provide a single Rule 30(b)(6) deponent to date. Instead of providing reasonable counter-proposals or limitations to the noticed Rule 30(b)(6) topics, Daiichi seeks to require Defendants to re-write the Rule 30(b)(6) deposition notice to Daiichi wholesale before it will agree to share any of its corporate knowledge through deposition.

Without conceding that this approach is reasonable or productive, Defendants Watson and Lupin hereby provide a further attempt to compromise regarding the topics discussed yesterday.

<u>With respect to Topic 3 (relating generally to research, development, and testing of colesevelam drug products)</u>: Watson and Lupin are willing to limit this topic by seeking only (1) testimony regarding the research, development, and testing undertaken by Daiichi to develop Welchol® as such research, development, and testing relates to the asserted claims of the patents-in-suit; and, (2) testimony from Daiichi concerning its knowledge of the research, development, and testing undertaken by the inventors or others at GelTex that led to the purported inventions set forth in the asserted claims of the patents-in-suit. In lieu of (2), Watson

and Lupin are willing to accept a binding representation from Daiichi that its only knowledge on that topic is derived from Genzyme (including its predecessor GelTex) and/or the inventors.

Watson and Lupin would accept the same limitations with respect to Topics 1, 2, 4, 5, 6, 34, 35, 36, 37, and 41 – i.e., that Daiichi would only provide testimony on such topics as it relates to the asserted claims of the patents-in-suit and only as it pertains to (1) Welchol® and/or (2) the work done by the inventors that led to the purported inventions in the patents-in-suit. To the extent not captured by the foregoing, Watson and Lupin would not seek Rule 30(b)(6) testimony on these topics.

With respect to Topic 10 (relating generally to embodiments of the inventions): Watson and Lupin are willing to limit this topic by only seeking information concerning (1) whether Welchol® embodies the asserted claims of the patents-in-suit; and, (2) embodiments of the asserted claims developed by the inventors or others at GelTex prior to the filing of the patents-in-suit. Again, in lieu of (2), Watson and Lupin are willing to accept a binding representation from Daiichi that its only knowledge on that topic is derived from Genzyme (including its predecessor GelTex) and/or the inventors.

With respect to Topic 29 (relating generally to the identity of documents relevant to other Rule 30(b)(6) topics): Watson and Lupin seek testimony regarding the identity of any documents and things related to other Rule 30(b)(6) topics. Thus, to the extent a corporate representative is produced on a specific topic, that witness would be expected to testify as to the identity of documents known to Daiichi regarding the topic on which he or she is testifying.

With respect to Topic 31 (relating generally to authentication of documents): Watson and Lupin seek to preserve their ability to ask questions to a witness designated on a specific topic that would establish the authenticity of documents relevant to that topic. We believe that such questions manifestly are proper Rule 30(b)(6) questions even if this topic had not been propounded.

With respect to Topic 33 (relating generally to Daiichi's colesevelam New Drug Applications): Watson and Lupin seek testimony from Daiichi regarding the portions of NDAs identified in this topic and amendments and supplements thereto and further relating to colesevelam hydrochloride's REDACTED

In connection with this Topic, Watson and Lupin further seek testimony from Daiichi regarding the REDACTED

With respect to other topics: Watson and Lupin's Rule 30(b)(6) topics are directed to plainly discoverable information, and it defies belief that Daiichi is unable to designate any witnesses with respect to any of them. In particular, the topics directed to secondary considerations of non-obviousness are directed to issues Defendants clearly need to probe through depositior REDACTED We have asked that Daiichi agree to identify and produce witnesses to testify in response to these topics as soon as possible in order to advance discovery in this case. The secondary consideration topics we have identified are: Topics 16, 17, 18, 21, 22, 23, 24, 25, 26, 27, and 42. We also do not believe there should be any dispute that Daiichi should produce a witness on issues regarding ownership and its interest in the patents-in-suit. These are Topics 19, 32, and 44. We also believe topics directed to Lupin and Watson's alleged infringement are proper. These are Topics 38 and 39. We offer this identification of topics in hopes that Daiichi will agree promptly to provide testimony on them and without waiving our rights to seek testimony on any other noticed topics. If Daiichi objects to providing any witness on the subjects of the aforementioned topics irrespective of any scope limitation, please let us know immediately so that the parties do not waste time discussing their scope. If Daiichi agrees that these are discoverable topics, please agree to provide witnesses in response to them and indicate what limitations Daiichi believes are necessary to the topics as currently worded. Given the shortness of time, please let us know your response by close of business on September 16, 2011.

Sincerely,

Jack Minnear

cc: Preston K. Ratliff, Esq.
Brian O'Reilly, Esq.
Jason O'Leary, Esq.
Jack Blumenfeld, Esq.
Rodger Smith, Esq.
Tara Raghavan, Esq.
Richard Horwitz, Esq.
Steven J. Fineman, Esq.
John L. North, Esq.
Jonathan K. Waldrop, Esq.

# EXHIBIT B

the scope of Topic No. 33 to now seek a Daiichi Sankyo corporate representative's testimony "regarding [1] the portions of NDAs identified in this topic and amendments and supplements thereto and [2] further relating to colesevelam hydrochloride's

REDACTED

(*See* Defendants' September 15, 2011 Letter to Plaintiffs.)

Revised Topic No. 33 does not identify specific "portions" of the NDAs Defendants seek testimony regarding, rather it simply identifies NDA Nos. 021-176, 022-362, 021-141 in their entirety. In addition, to the extent Defendants seek to limit Topic No. 33 to testimony regarding unidentified portions of the NDAs related to those properties of colesevelam identified in part [2], the topic is still overly broad and unduly burdensome. The NDAs are comprised of multi-part documents spanning tens of thousands of pages that relate to all facets of Welchol® (Plaintiffs' colesevelam hydrochloride products), and under the scope of revised Topic No. 33 it is conceivable that the majority of the NDAs could be considered "relating to" the properties identified in part [2] of the revised topic depending on Defendants' view of "relating to." (*See, e.g.*, DS_WEL0000001 - DS_WEL0059610.) Moreover, even if Daiichi Sankyo were to attempt to identify every part of its three NDAs "related to" the properties identified in part [2] of revised Topic No. 33, the topic would still be overly broad and unduly burdensome because Defendants have not identified what elements from those NDAs they are truly seeking testimony on. For example, Defendants would be seeking a corporate representative to testify regarding every element of every study that could relate to the potency and efficacy of Welchol®. Daiichi Sankyo cannot reasonably designate, let alone prepare, a corporate representative on such a broad scope of information.

## V. IDENTITY AND AUTHENTICITY OF ANY DOCUMENT RELATED TO ANY OF THE 30(B)(6) DEPOSITION TOPICS

Topic Nos. 29 and 31 originally requested a corporate representative to testify regarding "[t]he identity of documents and things concerning [all the 30(b)(6) deposition topics]" and "[a]uthentication of each document introduced as an exhibit during any deposition noticed by any Defendants(s)," respectively." Recognizing that these original topics were unintelligible, Defendants have revised Topic Nos. 29 and 31 to now seek testimony of a corporate representative "regarding the identity of any documents and things related to other Rule 30(b)(6) topics," and to "establish the authenticity of documents relevant to that topic." (*See* Defendants' September 15, 2011 Letter to Daiichi Sankyo.) Defendants, however, ignore the practicable impossibility of revised Topic Nos. 29 and 31.

---

[1] REDACTED suggests that this topic is an inappropriate attempt to depose a corporate representative regarding Daiichi Sankyo's legal contentions.

# EXHIBIT F

- Number of Depositions Objection: Further, Daiichi's General Objection No. 5 states that "[a] deposition pursuant to Defendants' 30(b)(6) Notice shall be counted against Defendants' deposition limit." Daiichi's individual responses contain objections asserting that the Rule 30(b)(6) topics are objectionable "to the extent that producing a deposition witness in response … would exceed the fact deposition maximum imposed on Defendants by the Court." (See e.g., Response to Topic No. 1.) To the extent that these statements are meant to convey that each individual designated by Daiichi under the Rule 30(b)(6) notice is to be counted as a separate deposition, they are contrary to the Federal Rules, which treat a deposition pursuant to Rule 30(b)(6) as a single deposition even if conducted through multiple deponents. Fed. R. Civ. P. 30(a)(2); see also Loops LLC v. Phoenix Trading, Inc., 2010 U.S. Dist. LEXIS 29012 at *3 (W.D. Wash. Mar. 4, 2010).

- "Does Not Seek Corporate Knowledge" Objection: In response to certain topics, Daiichi has objected on the basis that the topic is "directed to the knowledge of specific individuals, including individuals not employed by Daiichi Sankyo, rather than the knowledge of the corporate entity." (See e.g., Response to Topic No. 6.) For all topics, Defendants seek the corporate knowledge of Daiichi in accordance with the requirements of Rule 30(b)(6). Accordingly, this does not appear to be a valid objection.

- Objections to Secondary Considerations Topics: In response to Rule 30(b)(6) topics directed to Plaintiffs' alleged secondary considerations of non-obviousness, Daiichi has stated that it contends that Defendants have not established a prima facie case of obviousness. (See e.g. Response to Topic No. 16.) If Daiichi intends to withhold deposition testimony on that basis, such a withholding is manifestly improper. Not only is it not for Daiichi to judge whether Defendants have met their proof, it is not yet time for Defendants to make any proof. Moreover, the Federal Rules simply do not allow a party to sequence discovery unilaterally based on its own views about burdens of proof.

REDACTED

Without any indication of the objections, if any, that Daiichi intends to use as a basis to withhold testimony, Daiichi's responses and objections fail to meaningfully advance discovery in this case. We look forward to learning what limits, if any, Daiichi intends to impose on deposition questioning and, in particular, whether Daiichi intends to use any of the above-mentioned objection to foreclose questioning.

Please also disclose as soon as possible the identity of Daiichi's Rule 30(b)(6) deponents and the dates on which they will be made available for deposition.

# EXHIBIT K

# REDACTED IN ITS ENTIRETY

# EXHIBIT L

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 BROADWAY
NEW YORK, NEW YORK 10019-6799
212-506-1700
FACSIMILE: 212-506-1800

WRITER'S DIRECT DIAL NUMBER
(212) 506-1742

ATLANTA
HOUSTON
MIAMI
NEWARK
SAN FRANCISCO

September 21, 2011

VIA E-MAIL

Isaac S. Ashkenazi, Esq.
Paul Hastings LLP
75 East 55th Street
New York, NY 10022

Re: *Daiichi Sankyo, Inc. & Genzyme Corporation v. Watson Pharmaceuticals, Inc., et al.*,
**Civil Action No. 10-32 (NLH)(AMD) CONSOLIDATED**

Dear Isaac:

This responds to your September 20, 2011 letter. After a lengthy meet-and-confer process regarding Defendants' 30(b)(6) notice, Daiichi has offered to provide a single 30(b)(6) witness to testify only regarding "the sales of Welchol® in dollars, expenses in dollars (including high level advertising and promotion expenses), and the total number of sales representatives on an annual basis." This is not nearly commensurate with the topics identified in Defendants' notice of deposition, nor the scope of issues involved in this litigation. It leaves enormous amounts of territory uncovered, including on commercial success. Defendants agreed to narrow certain 30(b)(6) topics in an effort to reach agreement with Daiichi. However, Daiichi has failed to even make counter-proposals on the vast majority of topics, and the one counter-proposal it has made on commercial success is not acceptable because it unduly limits properly-noticed topics. Without meaningful counter-proposals from Daiichi, there simply is nothing left to discuss. Defendants repeatedly explained why the topics are relevant and proper; Daiichi apparently disagrees and still continues to refuse to provide 30(b)(6) witnesses. Given the positions taken by Daiichi in its September 20, 2011 letter, it is clear the parties are at an impasse.

We do not endeavor to correct every statement in your letter, but offer a few observations in a final hope of clarifying the issues:

1. <u>In no instance do Defendants seek to take a contention deposition.</u>

REDACTED

REDACTED Defendants do not seek to elicit binding contentions from Daiichi through deposition.

2. Defendants repeatedly explained the relevance of and need for testimony from Daiichi on research and development and testing topics. In our telephone conferences and in correspondence, Defendants explained that these topics are relevant in two ways. First, testimony regarding the research leading up to the claimed invention clearly is relevant. Second, whether Daiichi's commercial Welchol® product embodies the asserted patent claims is part of the required nexus for the secondary considerations of non-obviousness on which Daiichi relies. Accordingly, Defendants are entitled to information on Daiichi's commercial product as it relates to the limitations of the asserted claims.

Daiichi is free to obviate either area of R&D testimony. With respect to the work leading up to the inventions, it may make a binding representation that it has no knowledge other than Genzyme's, in which case there would be nothing to explore through Daiichi. With respect to its commercial work, it is free not to assert secondary considerations of non-obviousness. Having done neither and having made no offer of any research, development, or testing testimony it will agree to provide, Daiichi has left this topic at an impasse.

3. Daiichi's offer to provide testimony regarding commercial success is completely inadequate. Daiichi offers to provide a witness (the first 30(b)(6) witness it has agreed to provide at all) to testify to sales of Welchol®, expenses including "high level" advertising and promotion expenses, and the number of its sales representatives. It still refuses to provide any witness to speak to its marketing efforts generally, the factors influencing sales, its market projections, or any testimony on any of the other secondary considerations it asserts. Daiichi's offer does not allow Defendants to explore, by way of example only, whether the sales it has achieved are the result of factors other than the asserted claims, such as special promotional offers. Daiichi asserts commercial success in this case and should provide meaningful testimony about it, not simply a witness to recite only sales and expense figures. Moreover, Daiichi has refused to provide testimony regarding any of the other secondary considerations it asserts.

4. Defendants will strenuously object to any post facto 30(b)(6) designation by Daiichi of individual deposition testimony. To the extent Daiichi intends to designate the testimony of the inventors or any other fact witness after the fact as its own Rule 30(b)(6) testimony – after Daiichi has had the opportunity to hear the testimony and evaluate whether or not it is favorable to Daiichi – Defendants will object to such a designation as improper.

Sincerely,

Jack Minnear

cc: Preston K. Ratliff, Esq.