IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DAIICHI SANKYO, INC., et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>IMPAX LABORATORIES, INC., et al., )<br>)<br>Defendants. ) | C.A. No. 10-32-NLH (AMD)<br>CONSOLIDATED<br><br>**REDACTED<br>PUBLIC VERSION** |

### DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO COMPEL RULE 30(b)(6) DEPOSITION TESTIMONY FROM DAIICHI SANKYO, INC.

RICHARDS, LAYTON & FINGER, P.A.
Frederick L. Cottrell, III (#2555)
Cottrell@rlf.com
Steven J. Fineman (#4025)
Fineman@rlf.com
One Rodney Square
920 North King Street
Wilmington, DE 19801

OF COUNSEL:

KASOWITZ, BENSON, TORRES &
FRIEDMAN LLP
John L. North
Darcy L. Jones
Jonathan D. Olinger
1360 Peachtree Street, N.E., Suite 1150
Atlanta, GA 30309

Norman E.B. Minnear
David J. Galluzzo
1633 Broadway
New York, New York 10019

*Attorneys for Defendants Watson
Pharmaceuticals, Inc., Watson Pharma, Inc.,
and Watson Laboratories, Inc. (NV)*

POTTER ANDERSON & CORROON LLP
Richard L. Horwitz (#2246)
rhorwitz@potteranderson.com
David E. Moore (#3983)
dmoore@potteranderson.com
1313 North Market Street
Wilmington, DE 19801
(302) 984-6000

OF COUNSEL:

RAKOCZY MOLINO MAZZOCHI SIWIK
LLP
William A. Rakoczy
Paul J. Molino
Deanne M. Mazzochi
Tara M. Raghavan
6 West Hubbard Street, Suite 500
Chicago, IL 60654

*Attorneys for Lupin Ltd. and Lupin
Pharmaceuticals, Inc.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORIES .................................................................................................. ii
I. INTRODUCTION .................................................................................................. 1
II. ARGUMENT .......................................................................................................... 2
    A. Commercial Success Topics ...................................................................... 2
    B. Other Secondary Considerations   **REDACTED** ................................ 7
    C. Daiichi's NDA ............................................................................................ 7
    D. Research & Development Topics .............................................................. 8
    E. Topics Regarding Identity and Authenticity of Documents ..................... 10
III. CONCLUSION ..................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Geo. M. Martin Co. v. Alliance Mach. Sys. Int'l LLC,
   618 F.3d 1294 (Fed. Cir. 2010) ................................................................................................2, 4

In re DBC,
   545 F.3d 1373 (Fed. Cir. 2008) ....................................................................................................3

In re Huai-Hung Kao,
   639 F.3d 1057 (Fed. Cir. 2011) .................................................................................................2, 9

J.T. Eaton & Co. v. Atlantic Paste & Glue Co.,
   106 F.3d 1563 (Fed. Cir. 1997) .............................................................................................3, 4, 5

Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
   587 F. Supp. 1112 (D. Del. 1984) ................................................................................................3

Santarus, Inc. v. Par Pharmaceutical, Inc.,
   720 F. Supp. 2d 427 (D. Del. 2010) ......................................................................................3, 4, 5

RLF1 5508716v. 1

I.  **INTRODUCTION**

Defendants Watson and Lupin respectfully request that the Court compel Plaintiff Daiichi to provide Rule 30(b)(6) testimony.[1] Without intervention by the Court, Daiichi refuses to provide anything more than the most bare-bones testimony. The only deposition testimony Daiichi has offered to provide on any issue in this patent infringement litigation is testimony "regarding the sales of Welchol® in dollars, expenses in dollars (including high level advertising and promotion expenses), and the total number of sales representatives on an annual basis." This does not meet Daiichi's obligation to provide testimony in response to clear Rule 30(b)(6) topics directed to relevant issues.

Daiichi's primary rationale for not providing testimony is its claim that the relevant evidence in this case is directed to Defendants' allegedly infringing activities and Defendants' arguments that the patents are invalid.

# REDACTED

Daiichi still asserts the only testimony it need provide is on the amount of Welchol's® sales and expenses and the size of the sales force working on Welchol®. The law of commercial success makes clear that much more is relevant.

---

[1] While Defendants believe they have strong arguments to compel Daiichi to produce testimony regarding its interests in the patents-in-suit (**topics 19** and **32**) and knowledge Daiichi may have relevant to Defendants' alleged infringement (**topics 38** and **39**), Defendants do not address those topics herein and no longer seek to have Daiichi's testimony on them compelled, so that the Court may focus on the most critical areas of testimony Daiichi refuses to provide.

The various other objections raised by Daiichi to support its refusal to provide testimony – such as that Defendants' requests are either overbroad or, after Defendants have offered to narrow the topics in response to the overbreadth objection, that Defendants somehow are seeking contention depositions or that Daiichi need not provide factual information in its possession because it will later introduce expert opinion – all are empty and do not justify Daiichi's refusal to provide testimony.

## II. ARGUMENT

### A. Commercial Success Topics

Daiichi's meager offer of testimony on commercial success – amount of sales, expenses, and sales force only – barely scratches the surface of the evidence relevant to commercial success in patent cases. In its Answering Brief, Daiichi attempts to justify its offer by stating that "commercial success is generally shown by significant sales of the product in a relevant market." (D.I. 164 at 7.) However, case law shows that there is much more evidence relevant to commercial success than statistics about sales, expenses, and sales force size.

Notably, Daiichi ignores entirely the nexus requirement described in Defendants' Opening Brief. (D.I. 147 at 12.) The sales of a product only bear on the validity of a patent claim where there is a connection between the sales and what is set forth in that patent claim. See Geo. M. Martin Co. v. Alliance Mach. Sys. Int'l LLC, 618 F.3d 1294, 1304 (Fed. Cir. 2010) ("The commercial success of a product is relevant to the non-obviousness of a claim only insofar as the success of the product is due to the claimed invention."); see also In re Huai-Hung Kao, 639 F.3d 1057, 1068 (Fed. Cir. 2011) ("For objective evidence of secondary considerations to be accorded substantial weight, its proponent must establish a nexus between the evidence and the merits of the claimed invention."). Indeed, the Federal Circuit has found that a plaintiff's commercial success claim fails where the plaintiff "has done little more than submit evidence of

2

sales" without showing any connection between the sales and the merits of the invention. In re DBC, 545 F.3d 1373, 1384 (Fed. Cir. 2008). There is no justification for Daiichi's limited offer of commercial success testimony.

The Eaton case relied upon by Daiichi establishes that Daiichi should offer more testimony.[2] In that case, the Federal Circuit held that the patentee is required to show a "nexus between commercial success and the patented invention" and, if it does, "the burden shifts to the challenger to prove that the commercial success is instead due to other factors extraneous to the patented invention, such as advertising or superior workmanship." J.T. Eaton & Co. v. Atlantic Paste & Glue Co., 106 F.3d 1563, 1571 (Fed. Cir. 1997). These are precisely the issues on which Daiichi refuses to give testimony.

A recent District of Delaware Hatch-Waxman decision makes clear that the relevant evidence for commercial success goes far beyond mere sales and expense figures. In Santarus, Inc. v. Par Pharmaceutical, Inc., Judge Sleet rejected the patentee's claims of commercial success because there was not a "close nexus between the asserted merits of the invention and the sales and growth" of the commercial drug product. 720 F. Supp. 2d 427, 454 (D. Del. 2010). In so holding, the Court looked to the brand's "preferential pricing and other marketing and sales tactics" and the fact that the drug's sales "fell far short of [the patentee's] own expectations," and compared the drug's sales to other drugs against which it competed. Id. at 453-54. These also

---

[2] Other cases cited by Daiichi fare no better. The Paine Webber case Daiichi cites to support its argument that Defendants' request for commercial success testimony is more akin to damages discovery is a case involving a plaintiff's effort to obtain a defendant's financial information – the opposite of the present case. Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 587 F. Supp. 1112, 1116 (D. Del. 1984). The Court noted that commercial success "is most easily demonstrated by the activities of the patentee." Id. In any event, the case is inapposite because Defendants do not seek evidence of individual sales of colesevelam or other granular financial data that might be associated with damages, but instead seek testimony on topics that the Federal Circuit and this Court have found relevant in commercial success decisions.

are subjects on which Daiichi refuses to give testimony. Indeed, if Daiichi's position were correct, the extremely narrow subset of Rule 30(b)(6) testimony that Daiichi has agreed to provide in this case would be the only Rule 30(b)(6) testimony a plaintiff would ever have to provide on commercial success or other secondary considerations. All of the authority cited above establishes it is not.

An examination of each topic shows the hollowness of Daiichi's objections:

**Topic No. 23** calls for "[f]actors influencing the sales of any Colesevelam Drug Product(s)." (D.I. 148, Ex. D at 9.) This is relevant to showing the connection (or lack thereof) between sales and the merits of the patent claims: if factors other than the claimed inventions are responsible for the drug's sales, those sales do not demonstrate the value of the patent claims. Even Daiichi's own Eaton case states that a defendant can use evidence of "other factors" for the sales to rebut nexus. Eaton, 106 F.3d at 1571. In Geo, the Federal Circuit found a commercial success claim to fail where the commercial success was attributable to the patentee's "pre-existing market share." Geo. M. Martin, 618 F.3d at 1304. Daiichi's knowledge of what factors are responsible for the sales of Welchol® is relevant to whether its sales are attributable to the patent claims or something else. This request in no way seeks damages discovery, but instead seeks information that the Federal Circuit and this Court have found highly probative of the commercial success issue. Geo. M. Martin, 618 F.3d at 1304; Santarus, 720 F. Supp. 2d at 454. Likewise, Daiichi's claim that the topic is broad only shows that there are a large number of potential factors to which sales are attributed, thus meaning there is substantial evidence that

# REDACTED

**Topic No. 24** is directed to Daiichi's marketing, advertising, and distribution for colesevelam. (D.I. 148, Ex. D at 9.) Like Topic No. 23, this topic is directly relevant to whether

4

the sales of Welchol® can be tied to the patent claims. Daiichi's <u>Eaton</u> case expressly mentions "advertising" as an area to be considered in determining why a commercial product was successful and whether that success owes to the patent claims. <u>Eaton</u>, 106 F.3d at 1571. <u>Santarus</u> also makes this point, finding that pricing, discounts, and rebates "[l]ike traditional advertising and marketing" were the cause of the drug's sales, not the merits of the patent claims. <u>Santarus</u>, 720 F. Supp. 2d at 454. Without being able to ask questions of Daiichi about how it marketed and advertised its products, Defendants are deprived of a source of evidence that could

REDACTED   The fact that Daiichi produced "promotional materials submitted to the FDA for approval" does not address pricing, rebates, or marketing efforts generally – not to mention that a production of documents on a topic does not obviate the need for deposition testimony on it.

**Topic No. 21** calls for Daiichi's "analyses and projections relating to the market for any Colesevelam Drug Product(s)." (D.I. 148, Ex. D at 9.) In <u>Santarus</u>, the Court discussed the brand's failure to meet sales expectations as a factor relevant to commercial success. <u>Santarus</u>, 720 F. Supp. 2d at 453. Daiichi claims that its projections are irrelevant because commercial success is an objective, not subjective inquiry. (D.I. 164 at 6.) Were Daiichi's position correct, courts would have statistical formulas to determine commercial success – a certain profit margin ratio or sales over a certain amount would automatically meet the threshold for commercial success. What is missing from Daiichi's analysis is that commercial success is shown by sales "in a relevant market." <u>Eaton</u>, 106 F.3d at 1571. Daiichi's projections of its sales bear on whether Welchol® is in the same market as all anti-cholesterol drugs, including Lipitor® which has sales that dwarf Welchol's®, or whether there is a smaller subset of drugs with which it competes.

**Topic Nos. 22, 25 & 26** call for Daiichi's "unit sales and revenue," "amount spent on marketing," and "number of sales representatives" on a quarterly basis or as otherwise kept in the ordinary course of business. (D.I. 148, Ex. D at 9.) These are the only topics to which Daiichi's offer to provide testimony responds. Yet even on these topics, Daiichi has not agreed that it will produce its witness to testify to the data on a quarterly basis, if in fact that is how Daiichi keeps the information. If Daiichi has sales, expenses, and sales representative data on a quarterly basis, then that information is within its corporate knowledge, and Daiichi should provide it. Daiichi is not entitled to unilaterally decide that only annual data is relevant.

**Topics No. 27** and **42** ask for the factual bases for REDACTED secondary considerations of non-obviousness and all facts supporting, refuting, or otherwise related to REDACTED commercial success.[3] (D.I. 148, Ex. D at 9, 11.) Daiichi asserts that these topics impermissibly seek contention interrogatories. However, Defendants made clear that they in no way seek to elicit Daiichi's contentions through depositions. (See D.I. 148, Ex. L.) To the extent Topic No. 27 is phrased in such a way that raises a concern about contention interrogatories, Defendants already have represented that this is not the testimony they seek. Topic No. 42, in contrast, asks for all facts relevant to REDACTED commercial success REDACTED — supporting, refuting, or otherwise. (D.I. 148, Ex. D at 11.) Daiichi possesses REDACTED REDACTED — facts about the sales of its products, the nexus between those sales and the patented claims, and facts about the various factors which may have been responsible for the sales.

# REDACTED

---

[3] Topic 27 is directed to secondary considerations generally. It is addressed herein with the commercial success topics to follow Daiichi's organization in its Answering Brief.

B.    <u>Other Secondary Considerations</u>    REDACTED

Daiichi has refused to provide any testimony at all on the other secondary considerations REDACTED Topics **16, 17,** and **18** ask for testimony on "[a]ny unexpected or surprising properties" of the drug products alleged to be within the asserted patent claims, "evidence" of "a long-felt but unmet need" for the inventions, and "[a]ttempts to copy" the inventions. (D.I. 148, Ex. D at 8.) Each of these topics is a secondary consideration of non-obviousness REDACTED , but Daiichi will not provide testimony, again arguing that these are contention deposition topics. Defendants have made clear that they do not seek to take contention depositions, and the wording of these topics does not raise any such concern. Instead, Defendants seek any factual information Daiichi has that there was an unexpected property found with respect to the asserted claims, any factual information Daiichi has that there was an unmet, long-felt need for the inventions, and any factual information Daiichi has that there were attempts to copy the inventions.

Defendants do not seek to have the Rule 30(b)(6) witness provide Daiichi's legal position on these issues. Instead, if there is factual information in Daiichi's possession that shows an unexpected property, long-felt need, or attempt to copy, Defendants seek to know what that information is – not what Daiichi's lawyers or experts will say about these issues.

C.    <u>Daiichi's NDA</u>

Daiichi also refuses to provide any testimony regarding **topic 33**, its New Drug Applications for colesevelam – the submissions it made to the FDA with information and testing about the relevant drug product. (D.I. 148, Ex. D at 10.) Daiichi's sole basis for refusing testimony here is that it finds the topic to be "overly broad and unfocused." (D.I. 164 at 11.) However, Daiichi fails to note that Defendants addressed Daiichi's overbreadth concern by limiting this topic during the meet-and-confer and in their Opening Brief. (D.I. 147 at 9-10.)

7

Defendants proposed to limit this topic to

# REDACTED

(D.I. 147 at 10; D.I. 148, Ex. A at 2.) In short, the disputed issue to be determined is whether the validity of the asserted patent claims can be sustained REDACTED REDACTED Daiichi's NDAs contain information relevant to these issues, and Defendants should be permitted to depose Daiichi on its NDA to the extent the NDA bears on those issues which Daiichi introduced.

Daiichi's claim that Defendants' narrowing of the topic converts it into a contention deposition topic is incorrect. Defendants seek any factual information Daiichi has about the REDACTED and other properties of Daiichi's own NDA products. Defendants do not seek legal contentions, but rather what Daiichi's research – carried out by non-legal personnel, not at the direction of attorneys – shows about the efficacy of Daiichi's NDA products versus what came before them. This is relevant, factual testimony.

D. **Research & Development Topics**

Daiichi also refuses to provide any testimony regarding any research and development topics, specifically **topics 1-6, 10, 34, 35, 36, 37,** and **41**, which are relevant to the issues in this case. (D.I. 148, Ex. D at 6-7, 10-11.) In making its overbreadth arguments, Daiichi again ignores the limitations Defendants have offered on these topics. Defendants limited these topics to two areas of clear relevance: (1) the inventors' research and development of the inventions; and, (2) Daiichi's development of a commercial product embodying the asserted patent claims.

8

(D.I. 148, Ex. A.) As set forth in Defendants' Opening Brief, and not contested by Daiichi, the first area is relevant to validity issues arising under 35 U.S.C. §§ 102, 103 & 112, and the second area is again relevant to the nexus issue for secondary considerations – the exploration of whether Daiichi's Welchol® products embody the asserted patent claims such that the commercial activity is probative of the obviousness of those claims. (D.I. 147 at 11-12.)

Daiichi does not appear to dispute the relevance of the work leading up to the inventions, but instead argues that Defendants should be satisfied with having deposed the inventors. This misses the point. In the absence of a representation from Daiichi that it has no unique knowledge on this topic, Defendants should be able to probe what knowledge Daiichi has through deposition testimony. If Daiichi has no knowledge about the work leading up to the inventions other than what the inventors have, it should say so, and this issue would be resolved. Daiichi has been unwilling to do so.

The second category, testimony related to whether Welchol® embodies the asserted patent claims, is relevant to commercial success and other secondary considerations because there must be a nexus between the evidence and the "merits of the claimed invention." Kao, 639 F.3d at 1068. For example, asserted claim 12 of U.S. Patent No. 5,693,675 requires the existence of an alkylated crosslinked polymer bearing certain features described in that claim and the claims from which it depends. (D.I. 1, Ex. B at col.16 ll.27-29.) If Daiichi's Welchol® product does not possess those features, there is no nexus between its sales and the merits of claim 12.

The question of nexus will need to be decided in this case because REDACTED REDACTED (D.I. 148, Ex. K.) Thus, Daiichi should provide factual information that will enable that determination to be made – how Daiichi crosslinks the polymer and how Daiichi performs the other elements referenced in the claim. Defendants seek factual

9

information in Daiichi's possession, not its lawyers' or experts' arguments. These are discoverable topics, and Daiichi should not be able to withhold its corporate knowledge.

### E. Topics Regarding Identity And Authenticity Of Documents

Finally, Daiichi refuses to provide testimony on **topics 29** and **31**, which seek testimony on the identity and authenticity of documents regarding other Rule 30(b)(6) topics. (D.I. 147, Ex. D at 10.) Daiichi's extreme reading is that Defendants are "essentially requesting" that a Daiichi witness "categorize and organize each and every document concerning Defendants' topics." (D.I. 164 at 19.) That is not what the topics say, nor what Defendants have made clear they intend. These topics clarify that when a Daiichi witness is examined on a particular Rule 30(b)(6) topic, that witness can be asked to identify or authenticate a document shown to the witness relevant to that topic. (D.I. 147 at 13.) Defendants are willing to discuss with Daiichi an agreement as to the authenticity of party documents, but plainly should be able to ask a witness whether a document is what it appears to be.

### III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant its motion to compel Rule 30(b)(6) deposition testimony from Daiichi Sankyo, Inc. on Topic Nos. 16-18, 21-27, and 42 (commercial success and secondary considerations); Topic No. 33 (Daiichi's New Drug Applications for colesevelam); Topic Nos. 1-6, 10, 34-37, and 41 (research, development, testing, and embodiments of the asserted patent claims); and, Topic Nos. 29 and 31 (the identity and authentication of documents).

| | |
|---|---|
| */s/ Steven J. Fineman* | *David E. Moore* |
| Frederick L. Cottrell, III (#2555) | Richard L. Horwitz (#2246) |
| Cottrell@rlf.com | rhorwitz@potteranderson.com |
| Steven J. Fineman (#4025) | David E. Moore (#3983) |
| Fineman@rlf.com | dmoore@potteranderson.com |
| Richards, Layton & Finger, P.A. | Potter Anderson & Corroon LLP |
| One Rodney Square | 1313 North Market Street |
| 920 North King Street | Wilmington, DE 19801 |
| Wilmington, DE 19801 | (302) 984-6000 |
| Attorneys for Defendants Watson Pharmaceuticals, Inc., Watson Pharma, Inc., and Watson Laboratories, Inc. (NV) | Attorneys for Lupin Ltd. and Lupin Pharmaceuticals, Inc. |

OF COUNSEL:
John L. North
Darcy L. Jones
Jonathan D. Olinger
Kasowitz, Benson, Torres & Friedman LLP
1360 Peachtree Street, N.E., Suite 1150
Atlanta, GA 30309

Norman E.B. Minnear
David J. Galluzzo
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019

Dated: October 20, 2011

OF COUNSEL:
William A. Rakoczy
Paul J. Molino
Deanne M. Mazzochi
Tara M. Raghavan
Rakoczy Molino Mazzochi Siwik LLP
6 West Hubbard Street, Suite 500
Chicago, IL 60654

# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2011, I electronically filed the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following and which has also been served by electronic mail:

Jack B. Blumenfeld, Esquire
Rodger D. Smith, II, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19801


I hereby certify that on October 20, 2011, I have sent by electronic mail, the foregoing document to the following non-registered participants:

| | |
|---|---|
| Joseph M. O'Malley, Jr., Esquire | Scott K. Reed, Esquire |
| Bruce M. Wexler, Esquire | Filko Prugo, Esquire |
| Preston K. Ratliff II, Esquire | Donald J. Curry, Esquire |
| Isaac S. Ashkenazi, Esquire | Brian D. O'Reilly, Esquire |
| Paul, Hastings, Janofsky & Walker LLP | Fitzpatrick, Cella, Harper & Scinto |
| 75 East 55th Street | 1290 Avenue of the Americas |
| New York, NY 10022 | New York, NY 10104 |


*/s/ Steven J. Fineman*
Steven J. Fineman (#4025)
Fineman@rlf.com

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2011, I electronically filed the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following and which has also been served by electronic mail:

Jack B. Blumenfeld, Esquire
Rodger D. Smith, II, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19801

Richard L. Horwitz, Esquire
David E. Moore, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951

I hereby certify that on October 27, 2011, I have sent by electronic mail, the foregoing document to the following non-registered participants:

Joseph M. O'Malley, Jr., Esquire
Bruce M. Wexler, Esquire
Preston K. Ratliff II, Esquire
Isaac S. Ashkenazi, Esquire
Paul, Hastings, Janofsky & Walker LLP
75 East 55th Street
New York, NY 10022

Scott K. Reed, Esquire
Filko Prugo, Esquire
Donald J. Curry, Esquire
Brian D. O'Reilly, Esquire
Fitzpatrick, Cella, Harper & Scinto
1290 Avenue of the Americas
New York, NY 10104

/s/ Laura D. Hatcher
Laura D. Hatcher (#5098)
Hatcher@rlf.com